1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Garrison and Kathleen G. Garrison, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>PHH Mortgage Corp. et al.,<br><br>Defendants. | No. CV-11-918-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 13). For the reasons discussed below, the motion is granted.

**BACKGROUND**

On April 8, 2005, Plaintiffs Dennis and Kathleen Garrison borrowed $116,500 to purchase a home located at 14857 W. Larkspur Drive, in Surprise, Arizona ("the Property") and secured the loan with a Deed of Trust ("DOT") in the Property. (Doc. 13, Ex. 2).[1] The DOT names PHH Mortgage Corp ("PHH") as the Lender, First American Title Insurance as

---

[1] Defendants have attached copies of the Promissory Note and the Deed of Trust to their motion. (Doc. 13, Ex. 1–2). The Deed of Trust has been filed with the Maricopa County Recorder's Office. The Court will therefore take judicial notice of this "matter[ ] of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991).

the Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee. (*Id.*). On March 17, 2011, MERS, as the nominee of PHH, substituted Jason F. Sherman as Trustee. (Doc. 14, Ex. 3). On March 30, Christopher Perry issued a Notice of Trustee's Sale. (Doc. 14, Ex. 4).[2]

Plaintiffs filed this action in Maricopa County Superior Court on March 30, 2011. (Doc. 1, Ex. 6). They applied for a temporary restraining order to block the Trustee's sale on the same day. (Doc. 6, Ex. 3). Defendants removed the action to this Court. (Doc. 1). On May 25, Plaintiffs filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim. (Doc. 13).[3] In their Response, Plaintiffs conceded that "their original Complaint is too prolix and at times unnecessarily complex." (Doc. 14). They moved for leave to amend their complaint, which was granted on July 25. (Doc. 20). They were granted an extension to file an amended complaint on September 23. (Doc. 21). No amended complaint was ever filed.

**DISCUSSION**

**I.  Legal Standards**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"

---

[2] The Substitution of Trustee and the Notice of Trustee Sale were attached to Plaintiff's Response to the Motion to Dismiss. They are both subject to judicial notice as documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original)).

[3] In their introduction, Defendants also state that their motion is pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, but make no argument in the body of the motion that their own removal to federal court was improper. (Doc. 13). The motion is therefore construed as a motion to dismiss pursuant to Rule 12(b)(6).

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task" in which a court relies upon "its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. Instead, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**II.  Analysis**

As Plaintiffs concede in their Response, the complaint, at 57 pages long and containing 157 numbered paragraphs, is neither "short" nor "plain." FED. R. CIV. P. 8(a)(1). Instead, it contains multiple overlapping legal theories, often fails to differentiate one Defendant from another, and relies substantially on an overarching critique of the mortgage lending industry and the practice of securitizing mortgages, rather than making claims particular to how Plaintiffs' loan was handled. (Doc. 1, Ex. 6). In their motion to amend, Plaintiffs stated that their "Objective" in filing an amended complaint would be, among other things, "to Eliminate All Allegations of Fraud, Negligent Misrepresentation and Concealment." (Doc. 15). Although they never filed an amended complaint, the Court construes this and other concessions as admissions that Plaintiffs cannot adequately plead these claims, and Counts Six, Seven, and Eight are hereby dismissed. Plaintiffs' remaining claims include Count One ("General Allegations as to all Defendants"), Count Two ("Injunctive Relief"), Count Three

1  ("Declaratory Relief"), Count Four ("Breach of Contract"), and Count Five ("Payment/
2  Satisfaction of Promissory Note"). Count One is broad-reaching, but can best be described
3  as comprised of three sub-arguments which Plaintiffs clarify in their Response, including that
4  a) since MERS is merely a "beneficiary" and "nominee" under the DOT, it did not have
5  power to transfer its interest, b) since the note and the deed were not held by the same entity,
6  the deed is unenforceable, and c) since the loan was securitized, only the purchasers of the
7  securities, and not the lender or the trustee, have the power to initiate foreclosure. Plaintiffs'
8  remaining counts, including the four subsections of Count One, will be discussed in turn.

### A. Count One - General Allegations

Plaintiffs' contentions that MERS lacked the power to transfer its interest, that the deed was rendered unenforceable by such a transfer, and that only purchasers of a security have the right to initiate foreclosure proceedings are all identical to claims that have been considered and rejected by this Court and the Ninth Circuit.

Plaintiffs argue that the MERS system of internally recording transfers of interest violates Ariz. Rev. Stat. ("A.R.S.") § 33-404 (2007) which requires that any transfer of title be recorded with the county recorder. In *Cervantes et al. v. Countrywide et al.*, 656 F.3d 1034 (9th Cir. 2011), the Ninth Circuit validated MERS's role as a trustee when interests in real estate are transferred. The Court found that the agreements remained enforceable because "the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders." *Cervantes*, 656 F.3d at 1044. Plaintiffs have not alleged that MERS was not the agent of the lenders for their mortgage, and their MERS-related claim fails.

Next, Plaintiffs contend that recent rulings have granted new life to the so-called "Show Me the Note" argument. In Arizona, "district courts have routinely held that [the] 'show me the note' argument lacks merit." *Diessner v. MERS*, 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009) (internal citation omitted, collecting cases). Plaintiff cites to Judge Teilborg's order in *In Re Mortgage Electronic Registration Systems (MERS) Litigation*, 2:09-md-02119-JAT, (D. Ariz. May 5, 2011), which granted plaintiffs leave to file a Consolidated Amended

Complaint, as evidence that "the bulk of the decisions from Judges on the United States District Court for the District of Arizona rejecting the 'show me the note' argument will be reconsidered by Judge Teilborg and may no longer have precedential value." (Doc. 14 at 3). As noted, in *Cervantes*, the Ninth Circuit held that an entity holding the deed as a trustee can foreclose after a note has been transferred because "the notes and deeds are not irreparably split." *Cervantes*, 656 F.3d at 1044. Judge Teilborg, meanwhile, has since dismissed the Consolidated Amended Complaint, holding that MERS "holds legal title to the secured interests and is the beneficiary or lienholder of record, as the nominee or agent for Plaintiffs' lenders and the lenders' successors and assigns." *MERS Litigation*, 2:09-md-02119-JAT at 6 (Oct. 3, 2011).

In addition to Judge Teilborg's earlier ruling, Plaintiffs assert that the decision of the Bankruptcy Appellate Panel in *In re Veal*, 450 B.R. 897 (2011) provides additional support for the theory that Defendants must show that they have the "rights of a holder" before they can enforce the DOT. (Doc. 14 at 8). In *Veal*, the Bankruptcy panel considered whether two entities had standing to obtain relief from a stay in bankruptcy proceedings in order to conduct a foreclosure. The parties there "assume[d] that the Uniform Commercial Code ('UCC') applie[d] to the Note." *Veal*, 450 B.R. at 908–09. The documentation provided to the bankruptcy court had included a recorded assignment of a mortgage to Option One Mortgage Corporation (which was not a party to the proceedings). All that American Home Mortgage Servicing, Inc. ("AHMSI"), which was seeking to foreclose, could offer to show that it had a right to enforce the note was a letter addressed "To Whom it May Concern," which "states that AHMSI acquired Option One's mortgage servicing business." *Veal*, 450 B.R. at 902. The Court found that this letter was not sufficient evidence to prove ownership, and denied AHMSI standing. Wells Fargo, which had also sought stay relief, was indeed found to lack standing on a variation of the "show me the note" theory. However, the decision regarding Wells Fargo's interest was decided under Illinois law, and the panel overtly acknowledged that "[w]e are aware of statutory law and unreported cases in this circuit that may give lenders a nonbankruptcy right to commence foreclosure based solely

upon their status as assignees of a mortgage or deed of trust, and without any explicit requirement that they have an interest in the note." *Veal*, 450 B.R. at 917 n.34.

The conclusions in *Veal* are not applicable to this case. Defendants do not concede that the sale is governed by the UCC, because the sale is conducted pursuant to the Deed of Trust, not the Note. (Doc. 19 at 7). Trustee sales under a Deed of Trust "are conducted on a contract theory under the power of sale authority of the trustee." *In re Krohn*, 204 Ariz. 205, 208, 52 P.3d 774, 777 (2002). The procedures for non-judicial foreclosures in Arizona are not codified in the UCC, therefore, but in A.R.S. §§ 33-807 (2007). These Deed of Trust statutes "set forth the only procedure for a valid trustee's sale." *Patton v. First Federal Sav. and Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978). Plaintiff does not allege any violation of these statutes, and therefore does not "state[ ] a plausible claim" that the non-judicial foreclosure is improper. *Iqbal*, 129 S.Ct. at 1950.

Plaintiffs finally allege that the mortgage cannot be foreclosed upon because it was securitized, but this Court has rejected such arguments when a plaintiff cannot show that "securitization has had any impact on Plaintiff's obligations under the loan." *Henkels v. J.P. Morgan Chase*, at *7 (D.Ariz. June 14, 2011). *See*, *e.g.*, *Colonial Savs., FA v. Gulino*, CV–09–1635–PHX–GMS, 2010 WL 1996608, at *4 (D.Ariz. May 19, 2010). The original DOT overtly provided that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Doc. 12, Ex. 2 ¶ 20). Moreover, "[b]y signing the deed[ ] of trust, the plaintiff[ ] agreed to the terms and [was] on notice of the contents." *Cervantes*, 656 F.3d at 1042.

None of the multiple sub-counts in Claim One have merit, and it is therefore dismissed.

**B. Counts Two and Three - Declaratory and Injunctive Relief**

As noted above and below, none of Plaintiffs' non-injunctive claims succeed. When all other claims are dismissed, declaratory or injunctive relief that is "premised upon those counts must likewise fail." *In re MERS Litigation*, 744 F. Supp. 2d 1018, 1032 (D. Ariz. 2010). Plaintiffs are not entitled to declaratory or injunctive relief.

## C. Count Four - Breach of Contract

The DOT provides that the Note "can be sold one or more times without prior notice to Borrower," and that "Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder." (Doc. 13, Ex. 2 ¶ 20, ¶ 24). Transferring the Note and appointing successive Trustees did not, therefore, constitute a breach of contract. Likewise, foreclosing when the loan went into default did not constitute a breach of contract. (Doc. 13, Ex. 2 ¶ 22). This Court has previously held that securitization does not violate the covenant of good faith and fair dealing, and therefore does not create an action for breach of contract. *See Colonial Savs., FA v. Gulino*, CV–09–1635–PHX–GMS, 2010 WL 1996608, at *4 (D.Ariz. May 19, 2010). Plaintiffs' other breach of contract claims are restatements of their general Count One arguments. (Doc. 1, Ex. 6 ¶¶ 99–109). They claim that "unless and until Defendants can first produce the original of the Promissory Note signed by the Plaintiff Borrowers," or an endorsement, selling the property would be a breach of contract. (*Id.* ¶ 104). Since, as discussed above, these variants of the "Show Me the Note" theory lack merit, Plaintiffs have not stated a claim for breach of contract.

## D. Count Five - Payment/Satisfaction of Promissory Note

Plaintiffs allege that Defendants purchased one or more Credit Default Swaps that compensated them when the loan went into default. (Doc. 1, Ex. 6 ¶¶ 110–117). Even assuming that Defendants purchased swaps, Plaintiffs are not entitled to compensation. If Defendants purchased swaps, they did so by providing consideration to a third party in exchange for the promise to pay if a loan defaulted. Plaintiffs did not provide the consideration for the swaps, and therefore would not be entitled to payment; the swaps are a contract separate from and independent of the original loan. As this Court has stated, "[t]o the extent a credit-default swap might technically pay off the money owed to a bank when a homeowner defaults on his mortgage, the benefit most certainly does not accrue to the homeowner who defaulted." *Dumont v. HSBC Mortg. Corp., USA,* 2010 WL 3023885, at *6 (D. Ariz. Aug 2, 2010). Count Five is therefore dismissed as well.

## CONCLUSION

Plaintiffs were granted leave to file an amended complaint in order to correct the acknowledged shortcomings of their complaint. Nevertheless, they never did so. The counts which they acknowledged were inadequately pled and which they stated they intended to withdraw are therefore dismissed. Their "show me the note" argument has been rejected by this Court, and their MERS-related arguments were recently rejected by the Ninth Circuit. Any money that Defendants received from a Credit Default Swap does not eliminate Plaintiffs' obligation to pay back their loan. With no claims remaining, they cannot seek injunctive or declarative relief. Their complaint is therefore dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 13) is **granted**. The Clerk of Court is instructed to **terminate this lawsuit**.

DATED this 19th day of December, 2011.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge